# GREENE *v.* HENKEL.

APPEAL FROM THE UNITED STATES CIRCUIT COURT FOR THE SOUTH-ERN DISTRICT OF NEW YORK.

Argued November 26, 27, 1901. — Decided January 6, 1902.

A fair interpretation of the language used by the District Judge in the court below in granting the application for a warrant of removal from New York to Georgia shows that from the evidence he was of opinion that there existed probable cause, and that the defendants should therefore be removed for trial before the court in which the indictment was found.

In proceedings touching the removal of a person indicted in another State from that in which he is found to that in which the indictment is found this court must assume, in the absence of the evidence before the court below, that its finding of probable cause was sustained by competent evidence.

It is not a condition precedent to taking action under Rev. Stat. § 1014 that an indictment for the offence should have been found.

The finding of an indictment does not preclude the Government, under Rev. Stat. § 1014, from giving evidence of a certain and definite character concerning the commission of the offence by the defendants in regard to acts, times, and circumstances which are stated in the indictment itself with less minuteness and detail.

Upon this writ the point to be decided is, whether the judge who made the order for the removal of the defendants had jurisdiction to make it; and if he had the question whether upon the merits he ought to have made it is not one which can be reviewed by means of a writ of *habeas corpus.*

The indictment in this case is *prima facie* good; and when a copy of it is certified by the proper officer, a magistrate acting pursuant to Rev. Stat. § 1014, is justified in treating the instrument as an indictment found by a competent grand jury, and is not authorized to go into evidence which

may show or tend to show violations of the United States statutes in the drawing of the jurors composing the grand jury which found the indictment.

By a removal such as was made in this case the constitutional rights of the defendants were in no way taken from them.

THIS case is brought here by the appellants for the purpose of obtaining a review of the order of the Circuit Court of the United States for the Southern District of New York denying their application for a writ of *habeas corpus*. The proceeding which led up to the application for the writ was commenced under section 1014 of the Revised Statutes, which reads as follows :

" For any crime or offence against the United States, the offender may, by any justice or judge of the United States, or by any commissioner of a Circuit Court to take bail, or by any chancellor, judge of a Supreme or Superior Court, chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate, of any State where he may be found, and agreeably to the usual mode of process against offenders in such State, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offence. Copies of the process shall be returned as speedily as may be into the clerk's office of such court, together with the recognizances of the witnesses for their appearance to testify in the case. And where any offender or witness is committed in any district other than that where the offence is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had."

The appellants were at the time of the commencement of the proceeding non-residents of the State of Georgia, one of them being a resident of the State of Connecticut, two residing in the State of New York and one in the State of Massachusetts. The proceeding was inaugurated in the Southern District of New York, where one of the assistants of the United States district attorney for that district, on December 13,

1899, made a sworn complaint in writing before United States Commissioner Shields, residing in that district, which complaint in substance charged upon information and belief the commission by the defendants, in the Southern District of Georgia, of the crime of conspiracy to defraud the United States of divers large sums of money, by means of a fraudulent scheme devised by the defendants together with one Oberlin M. Carter, a captain of the corps of engineers, United States Army; that the scheme was first devised and put in operation in the Southern District of Georgia in or about the year 1891, and had been continuously in process of execution there by the defendants from that time until October 1, 1899. The complaint also recites, with some detail, certain acts of the defendants by which the conspiracy was effectuated and accomplished, and it also stated that complainant's belief in regard to the charge made by him was based upon information contained in an indictment found by the grand jury of the United States District Court for the Southern District of Georgia, on December 8, 1899, and he alleged that bench warrants had been issued for the arrest of the defendants from the clerk's office of that court on December 9, 1899, and he was informed and believed that the defendants were then in the Southern District of New York. A certified copy of the indictment was attached and made a part of the complaint before the commissioner, who thereupon issued a warrant reciting the substance of the complaint, and directing the arrest of the defendants and their production before him to be dealt with according to law.

The defendants upon being notified of the issuing of the warrants at once appeared before the commissioner and asked for an examination, pending which they were enlarged upon bail. In the course of the examination, and in addition to the complaint already made, the assistant United States attorney for the Southern District of New York on January 13, 1900, filed a deposition detailing certain acts of one or more of the defendants performed by them in order to effect and further the conspiracy set forth in the indictment referred to in his original complaint.

Upon the examination, the defendants offered evidence tend-

ing to show a want of probable cause for believing them guilty of the charge made by the assistant district attorney. All evidence of this nature was objected to by counsel for the Government and was excluded by the commissioner, who held that the indictment found in the district court in Georgia was conclusive evidence of probable cause, and that the only further evidence necessary was proof identifying the defendants as being the parties mentioned in the indictment, and this proof being given, the commissioner committed them to the custody of the marshal of the Southern District of New York until a warrant for their removal to the Southern District of Geo ʹa should issue by the United States District Judge for the Sou nern District of New York, or until they should otherwise be dealt with according to law.

Application was thereupon made by the district attorney to the United States District Judge for the Southern District of New York for an order for the removal of the defendants under section 1014 of the Revised Statutes. At the hearing upon such application the defendants maintained that the commissioner should have received the evidence of want of probable cause, which they offered, and thereupon the District Judge made an order that, " after hearing on exceptions and on application for order of removal, ordered that the matter be referred back to the commissioner for taking further competent testimony as offered by either party in accordance with the opinion filed herein."

In the opinion which he filed the District Judge held that the defendants were not concluded by the indictment, but were entitled to introduce evidence before the commissioner to show want of probable cause for believing them guilty of the offence charged.

Pursuant to the order of the District Judge, the defendants again appeared before the commissioner, and a large amount of testimony *pro* and *con* was then taken by him on the question as to probable cause for believing the defendants guilty of the commission of the offence charged, as well as testimony concerning certain alleged irregularities in the drawing and organization of the grand jury which found the indictment upon which

the removal of the defendants is sought. The irregularities consisted of alleged violations of the statute in relation to the drawing of jurors for the courts of the United States, (section 2 of the act of June 30, 1879, 21 Stat. 43,) and were, as the defendants claimed, of such character as to render the organization of the grand jury illegal and to prevent such illegal body from finding any valid indictment. After all the testimony was in that either party desired to produce, the commissioner on March 21, 1901, again committed the defendants to the custody of the marshal by an order, in which he stated that, "after full and fair examination touching the charge in the annexed warrant named, it appears from the testimony offered that there is probable cause to believe the defendants guilty of the charges therein contained." Application was then made to the District Judge for an order of removal, which application was opposed by the defendants on the ground that the evidence showed that there was no probable cause for believing them guilty of the charge, and also because the indictment spoken of was wholly void on the grounds mentioned. After argument the judge decided that as to the objections of illegality in the drawing of the grand jury, they could be heard before the trial court, and its decision thereon, if erroneous, could be corrected in the regular course of appeal. Upon the subject of the evidence regarding probable cause the judge in the course of his opinion stated as follows:

"The commitment by the commissioner and his finding of probable cause have been made after an extremely full hearing of all the evidence offered on both sides. No evidence reasonably pertinent has been rejected. Objection is made that irrelevant and incompetent evidence offered by the Government was received by him; but, as stated in the former decision, the evidence receivable in such preliminary examinations is not to be strictly limited by the technical rules applicable upon the final trial; and upon a charge of fraud, or of conspiracy to defraud, a somewhat wide latitude in the testimony is always allowed even on the final hearing, for the purpose of showing the intent. The proof of the charges in this case does not consist of any direct and certain testimony of the commission of the

offences charged, but rests upon many facts and circumstances in a long course of dealing, from which it is claimed that the inference of an unlawful intent to defraud the Government must reasonably be inferred; and the bills alleged to be fraudulent in the last counts of the indictment are claimed to be fraudulent, not so much because they were not according to contract, as because the contracts themselves were fraudulent, and procured through a fraudulent conspiracy with Captain Carter, an employé of the Government. Considering the nature of the case, therefore, I find no such objections to the testimony admitted by the commissioner as to vitiate his findings or require reconsideration by him.

"As respects the finding of probable cause, I have carefully considered the very extended briefs and arguments of counsel, and have examined the voluminous evidence with a view to ascertain whether there was competent evidence before the commissioner sufficient in itself to sustain his finding of probable cause. Under the rule above stated, it is not for the judge, on an application for removal, to compare different parts of the testimony in order to determine their relative weight, or to substitute his own judgment for that of the commissioner, even though it might on the whole evidence be different. By this, however, I do not mean to be understood as expressing any opinion whatsoever on the merits of the case. The defendants have given a great deal of evidence tending to show that their contracts were fairly obtained, their work well and honestly done, and that the Government has not been defrauded a dollar.

"The Government, on the other hand, has given evidence tending to a contrary conclusion; and it has shown beyond question that Captain Carter, the employé of the Government and the engineer in immediate charge of the work on the Government's behalf, had for several years immediately preceding the contracts referred to in the indictment received from the contractors continuously, through his father-in-law, in many divisions of profits, one third of the final net proceeds of each contract remaining for division among the chief contractors; and that this one-third amounted in the aggregate to over

$700,000. This, it is claimed, gives significance and meaning to many other facts in evidence showing a fraudulent and illegal combination between the defendants and Captain Carter to benefit themselves at the expense of the Government, and to procure the allowance and payment of excessive and fraudulent bills by means of contracts fraudulently procured.

" A case presenting such circumstances is especially one that should be submitted to a jury trial. Nor need there be any apprehension that an impartial court and jury will not reach essential justice, or that while guarding jealously the honor and interests of the Government, they will not also appreciate the legitimate rights of the defendants, the peculiar difficulties, risks and hazards of such contract work, the excellence and merit of that which is well done, and the rights of the defendants by legitimate business methods to lessen competition and to secure as favorable contracts as they can ; and determine fairly whether the contracts in question were fraudulent, or obtained by illegal methods, or by a conspiracy with the engineer in charge to abuse the opportunities of his position in order to despoil the Government and obtain exorbitant prices for their common benefit.

" Having found in the previous decision that the ninth and tenth counts of the indictment are good, whatever may be held as to the counts preceding them, the defendants should be ordered to be removed for trial, or to give bail for their due appearance."

An order was thereupon made and the warrant signed by the judge on May 28, 1901, for the removal of the defendants to the Southern District of Georgia. On June 8, 1901, the defendants were surrendered by their bail to the custody of the marshal, and on that day they presented their petition to the Circuit Court of the United States for the Southern District of New York for a writ of *habeas corpus*, setting out the foregoing facts and the order for removal, which they alleged to be illegal and in violation of their constitutional rights. They also alleged in their petition that they were not in the State of Georgia at the time of the filing of the indictment, nor had they been since that time, and that while they were in New York, and during

the pendency of the proceedings before the commissioner to obtain their removal to the State of Georgia, and while they were under bail in such proceedings in the Southern District of New York, the United States district attorney of Georgia on March 5, 1900, in a letter written at Macon, Georgia, notified the attorneys of the defendants that the case would be called in the United States District Court at Savannah on March 12, 1900, in order that the defendants in the indictment might appear and present and interpose any objections which they might desire to urge as to the impannelling of the grand jury which returned a true bill of indictment in their case, and such other objections as they might make to the validity of the indictment. The petition then proceeded as follows:

"That your petitioners are informed and believe, that he now claims and insists that because of your petitioners' failure to appear as above required, that they are barred and estopped in that court from questioning the illegality and validity of said alleged grand jury. If this contention be sustained, then unless this court hears and passes on the said questions these petitioners will be tried on the alleged indictment in said court in Georgia, although the fact is that such indictment was never found by any legally organized grand jury, but was presented and filed in court by a body of men purporting to be a grand jury in whose selection and drawing every statute of the United States relating thereto was disregarded and set at naught."

It was also stated in the petition that the petitioners were held for trial for an infamous crime, without the indictment of a grand jury and in violation of the rights secured to them by the Constitution of the United States; that notwithstanding the invalidity of the indictment and the other facts stated in the petition, the United States marshal for the Southern District of New York detained the petitioners and was about to remove them to the eastern division of the Southern District of Georgia for trial upon the pretended indictment, and in pursuance of the proceedings had before the commissioner, and the warrant of removal issued thereupon by the District Judge; that the detention of the petitioners and their removal in pursuance of said proceedings and warrant were without authority of law,

and that they were restrained of their liberty in violation of the Constitution of the United States, and that any further proceedings in pursuance thereof or the further detention or imprisonment of the petitioners would be unlawful. They therefore asked for a writ of *habeas corpus* to inquire into the lawfulness of their imprisonment. After a hearing upon the petition, the Circuit Court denied the application, and from the order denying the writ the defendants appealed to this court, which appeal was allowed and the defendants admitted to bail pending its decision.

*Mr. David B. Hill* for appellants. *Mr. L. Laflin Kellogg, Mr. Abram J. Rose* and *Mr. Alfred C. Petté* were on his brief.

*Mr. Marion Erwin* and *Mr. Solicitor General* for appellee.

MR. JUSTICE PECKHAM, after making the above statement of facts, delivered the opinion of the court.

It will be noted that the proceeding leading up to the warrant for the removal of the defendants to Georgia for trial was inaugurated in the Southern District of New York by the sworn deposition of an assistant of the United States district attorney for the Southern District of New York, in which deposition it was alleged that an indictment had been found against the defendants in the United States District Court in Georgia, a certified copy of which indictment was attached to and made a part of the deposition. Upon the written charge thus made, the United States commissioner in New York issued his warrant for the arrest of the defendants, who upon being notified immediately appeared before him and an examination was proceeded with. Upon this examination the commissioner refused to receive evidence offered by the defendants tending to show a want of probable cause, and held that the certified copy of the indictment found in the District Court of Georgia was conclusive evidence of probable cause, and accordingly made an order committing the defendants to the custody of the marshal until a warrant for their removal should issue by the United States District Judge for the Southern District

of New York. Upon application to the District Judge for such warrant he held that the indictment was not conclusive evidence of probable cause, and sent the case back to the commissioner, (*United States* v. *Greene,* 100 Fed. Rep. 941,) to hear evidence on that subject. On subsequent hearings before the commissioner evidence *pro* and *con* as to probable cause was given and also as to the drawing of the grand jury, and that officer decided that "after full and fair examination touching the charges in the annexed warrant named, it appears from the testimony offered that there is probable cause to believe the defendants guilty of the charges therein contained." And he thereupon for the second time committed the defendants to the marshal's custody to await a warrant of removal to be signed by the District Judge. When the application for the warrant of removal was made to that judge he held that a proper case was made out, and signed the order for removal.

From these facts it is apparent that the question is not before us whether the finding of an indictment is in a proceeding under section 1014 of the Revised Statutes conclusive evidence of the existence of probable cause for believing the defendant in the indictment guilty of the charge therein set forth. The District Judge in this case held that it was not, and sent the case back to the commissioner, before whom evidence was thereafter taken upon the subject, and a decision arrived at after considering all the evidence in the case. We are not, therefore, called upon to express an opinion upon the question. Upon all the evidence taken before the commissioner he has found that probable cause existed. We think that a fair interpretation of the language used by the District Judge in granting the application for the warrant of removal shows beyond question that, from the evidence taken before the commissioner, the judge was of opinion that there existed probable cause, and that the defendants should therefore be removed for trial before the court in which the indictment was found.

When the judge refers to the testimony taken before the commissioner, although he does in terms say that he expresses no opinion upon the merits, yet he states that upon the evidence before him, it is a proper case to be submitted to a jury for

trial. That is in effect a finding of probable cause, which is not necessarily a finding that the persons charged are guilty. The meaning to be gathered from the language of the judge is that while there is evidence on the part of the Government tending to show the guilt of the accused, there is also evidence on the part of the defendants tending to show their innocence, and that the determination of the question in such a complicated case should properly be left to a jury. He says that he has carefully considered the very extended briefs and arguments of counsel and has examined the voluminous evidence with a view of ascertaining whether there was competent evidence before the commissioner sufficient in itself to sustain his finding of probable cause, and he, in substance, finds there was, and grants a warrant for the removal of the defendants. This is perfectly consistent with the further statement made by him that he did not express any opinion whatsoever on the merits of the case. That is, he did not express an opinion whether upon all the evidence the defendants ought to be convicted or acquitted of the charge. He was not called upon to do so. It was sufficient, if all the evidence being taken into account, there existed such probable cause for believing the defendants guilty as to warrant their removal for trial of the offence charged. This is not expressing an opinion upon the merits, although the language of the judge is sufficient as expressing the existence of probable cause against the defendants.

The evidence which was taken before the commissioner and which was before the District Judge upon the question of the existence of probable cause was not annexed to the petition and forms no part of the proceeding before the Circuit Court upon the application for the writ of *habeas corpus.* Whether that evidence was or was not sufficient for the commissioner to base his action upon or for the District Judge to approve, was not a question before the Circuit Judge, and is not before this court. We must assume, in the absence of the evidence taken before the commissioner and approved by the District Judge, that their finding of probable cause was sustained by competent evidence, bearing in mind also that on this proceeding the court

would not in any event look into the weight of evidence on that question.

It is urged, however, that the offence charged, and upon which defendants are to be removed, is that which is contained in the indictment only, and if the indictment be insufficient for any reason, that then there is no offence charged for the trial of which the defendants can properly be removed to another district.

It is not a condition precedent to taking action under section 1014 of the Revised Statutes that an indictment for the offence should have been found. *Price* v. *McCarty*, 89 Fed. Rep. 84; Circuit Court of Appeals, Second Circuit, June, 1898. In this case there was a sworn charge *prima facie* showing the commission of an offence against the United States, cognizable by the District Court of the United States for the Southern District of Georgia. To substantiate the charge a certified copy of an indictment found in the Georgia court was produced, and in addition evidence was given before the commissioner which, as he found, showed probable cause for believing that the defendants were guilty of the offence charged in his warrant. If there were any uncertainty or ambiguity in the indictment, the evidence given upon the hearing before the commissioner may have cleared it up. We cannot assume that it did not, and on the contrary, if such uncertainty in the indictment did exist, we must assume that the evidence did clear up such uncertainty, or otherwise the commissioner would not have granted his warrant for removal, nor would his decision have been approved by the District Judge.

The finding of an indictment does not preclude the Government under section 1014 from giving evidence of a certain and definite character concerning the commission of the offence by the defendants in regard to acts, times and circumstances which are stated in the indictment itself with less minuteness and detail, and the mere fact that in the indictment there may be lacking some technical averment of time or place or circumstance in order to render the indictment free from even technical defects, will not prevent the removal under that section, if evidence be given upon the hearing which supplies such defects

and shows probable cause to believe the defendants guilty of the commission of the offence defectively stated in the indictment. It follows also that a decision granting a removal under the section named, where an indictment has been found, is not to be regarded as adjudging the sufficiency of the indictment in law as against any objection thereto which may subsequently be made by the defendants. That is matter for the tribunal authorized to deal with the subject in the other district. We do not, however, hold that when an indictment charges no offence against the laws of the United States, and the evidence given fails to show any, or if it appear that the offence charged was not committed or triable in the district to which the removal is sought, the court would be justified in ordering the removal, and thus subjecting the defendant to the necessity of making such a defence in the court where the indictment was found. In that case there would be no jurisdiction to commit nor any to order the removal of the prisoner.

Upon this writ the point to be decided is, whether the judge who made the order for the removal of the defendants had jurisdiction to make it, and if he had, the question whether upon the merits he ought to have made it is not one which can be reviewed by means of the writ of *habeas corpus.*

Jurisdiction upon that writ in such a proceeding as this does not extend to an examination of the evidence upon the merits. The matter for adjudication is similar to that which obtains in cases of international extradition. In such case, if there is competent legal evidence on which the commissioner might base his decision, it is enough, and the decision cannot be reviewed in this way. *Bryant* v. *United States,* 167 U. S. 104. There must be some competent evidence to show that an offence has been committed over which the court in the other district had jurisdiction and that the defendant is the individual named in the charge, and that there is probable cause for believing him guilty of the offence charged.

We do not think that under this statute the commissioner would be warranted in taking evidence in regard to the organization of the grand jury which found the indictment, as claimed by the defendants. The indictment is valid on its face;

purports to have been found by a grand jury acting in fact as such at a regular term of a District Court of the United States, presided over by one of its judges and hearing testimony in the ordinary way. In our opinion, such an indictment is *prima facie* good, and when a copy of it is certified by the proper officer, a magistrate, acting pursuant to section 1014 of the Revised Statutes, is justified in treating the instrument as an indictment-found by a competent grand jury, and is not compelled or authorized to go into evidence which may show or tend to show violations of the United States statutes in the drawing of the jurors composing the grand jury which found the indictment.

We agree with the District Judge, that matters of that nature are to be dealt with in the court where the indictment is found, and we intimate no opinion upon the merits of those questions. Whether the defendants have waived the right to raise them, or whether they could waive the same, are also questions that are not before us. They must be raised before and decided by the United States court sitting in the Southern District of Georgia, in the first instance, and we express no opinion as to their validity.

We do not think that by this order of removal the constitutional rights of the defendants are in anywise taken from them. The provision that no person may be held to answer for an infamous crime unless upon the presentment or indictment of a grand jury is not violated or infringed. If this so-called indictment-be void for the reasons alleged, the place to set up its invalidity is the court in which it was found. The provision is certainly not violated when, under a proceeding such as this upon a sworn complaint and upon evidence under oath which both magistrates have found to amount to probable cause, an order has been made for removing the defendants to the court within whose jurisdiction the offence is charged to have been committed and where all the defences of the parties may be set forth in due and orderly manner and the judgment of the court obtained thereon.

The order denying the application for the writ, is

*Affirmed.*